## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

| | |
|---|---|
| **VELMA SMITH, Individually and On Behalf of All Others Similarly Situated,**<br><br>                              **Plaintiff,**<br><br>   **v.**<br><br>**TRANSAMERICA CORPORATION, AEGON NV, AEGON USA, LLC d/b/a TRANSAMERICA, TRANSAMERICA LIFE INSURANCE COMPANY, AEGON DIRECT MARKETING SERVICES, INC. f/k/a AEGON SPECIAL MARKETING SERVICES, INC., PENNY OPCO LLC d/b/a JCPENNEY f/k/a JC PENNEY, INC, TCS e-SERVE INTERNATIONAL LIMITED.**<br><br>                              **Defendants.** | **Case No.** 3:23-cv-357-KHJ-MTP<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW Plaintiff Velma Smith, individually and on behalf of all others similarly situated, and states and alleges the following for her Complaint against Transamerica Corporation, Aegon NV, Aegon USA, LLC d/b/a Transamerica, Transamerica Life Insurance Company, Aegon Direct Marketing Services, Inc. f/k/a Aegon Special Marketing Services, Inc., Penney OpCo LLC d/b/a JCPenney f/k/a JC Penney, Inc., and TCS e-Serve International Limited (collectively, "Defendants").

### PARTIES, RESIDENCY, JURISDICTION AND VENUE

1.      Plaintiff Velma Smith ("Plaintiff") is a citizen and resident of Clinton, Hinds County, Mississippi. At all relevant times, Plaintiff was an insured within the meaning of Transamerica Life Insurance Company Group, Policy Number 74A04Q2649.

2.      Defendant Transamerica Corporation, a subsidiary of Defendant Aegon NV, is an American holding company for various life insurance companies and investment firms with its principal place of business located at 6400 C Street SW, Cedar Rapids, Iowa 52499. It may be served with process through its registered agent, CT Corporation System, 400 E. Court Ave., Des Moines, IA 50309.

3.      Defendant Aegon NV, is a Dutch financial and insurance services corporation and parent company of Aegon USA, LLC d/b/a Transamerica, which includes but is not limited to Transamerica Life Insurance Company. Aegon NV is an internationally active insurance group as defined by Miss. Code Ann. § 83-6-1(l). As a foreign non-licensed insurer, it can be served with process by serving the Mississippi Commissioner of Insurance in accordance with Miss. Code Ann. § 83-21-37.

4.      Defendant Aegon USA, LLC d/b/a Transamerica, is a Maryland limited liability corporation. It may be served with process at its principal place of business: 100 Light St. FL B1, Baltimore, Maryland, 21202-1098.

5.      Defendant Transamerica Life Insurance Company ("Transamerica") is a foreign insurance company licensed to do business in the state of Mississippi in accordance with Miss. Code Ann. § 83-17-51, *et. seq*. Its principal place of business is located at 6400 C Street SW, Cedar Rapids, Iowa 52499. It may be served with process through its registered agent, CT Corporation System of Mississippi, 645 Lakeland East Dr., Suite 101, Flowood, Mississippi 39232.

6.      Defendant Aegon Direct Marketing Services, Inc. (f/k/a Aegon Special Marketing Services, Inc.) is a foreign corporation not licensed to do business in Mississippi and a wholly owned subsidiary of Aegon NV. Its principal place of business is located at 2700 W. Parkway,

Plano, Texas 75075. It may be served with process in accordance with Miss. Code Ann. §§79-4-15.10 and 75-35-13 and Miss. R. Civ. P. Rule 4(c)(1) and (d)(4).

7.      Defendant Penney OpCo LLC d/b/a JCPenney (f/k/a JC Penney, Inc.) is a limited liability company admitted to do business in Mississippi which may be served with process by serving C.T. Corporation System, 645 Lakeland East Drive, Ste. 101, Flowood, Mississippi 39232.

8.      TCS e-Serve International Limited is an Indian third-party insurance administrator with its principal place of business at 2010 Lyndon B Johnson Fwy, Suite 400, Dallas Texas 75234. TCS may be served with process by serving its designated agent CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

9.      At all times material hereto, each of the Defendants acted collectively and/or indicated that they were the agents and representatives of each of the other Defendants.

10.     For purposes of venue, the events giving rise to the individual and class claims that are the subject of this action occurred in part in Clinton, Hinds County, Mississippi.

11.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

12.     This Court has personal jurisdiction, both general and specific, over Defendants.

## FACTS

13.     In 2013, JC Penney, Inc., predecessor of JCPenney, and Transamerica Life Insurance Company, through Transamerica's subsidiary Aegon Marketing Services, Inc., solicited JCPenney credit card customers to purchase a group hospital indemnity policy issued by Transamerica.

14.     As a JCPenney credit card holder, Plaintiff Velma Smith accepted the offer in 2013 and became an insured under Group Policy Number 74A04Q2649, paying monthly premiums, as

reflected on credit card statements issued by JCPenney. An exemplary copy of Plaintiff's monthly credit card statement is attached hereto as Exhibit A.

15.     Transamerica's coverage of Plaintiff was shown on her monthly credit card statements for premium payments for coverage under Group Policy Number 74A04Q2649, a hospital indemnity policy. *See* Exhibit A.

16.     Transamerica represented on its website that its hospital indemnity policies are accident group plans that "pay benefits that can be used for medical bills and out-of-pocket expenses."[1]

17.     On May 26, 2021, while insured by Transamerica, Plaintiff was involved in a motor vehicle accident in which she sustained serious injuries requiring emergency transport to the University of Mississippi Medical Center, where she was treated in the emergency room and admitted as a patient to the hospital for overnight stay.

18.     Sometime before August 11, 2021, Plaintiff made efforts to file a claim with Transamerica under Group Policy Number 74A04Q2649 and to obtain a copy of her insurance policy.

19.     On information and belief, Plaintiff made an initial attempt to make a claim under the group policy sometime on or before August 11, 2021, using the Transamerica's website; when Smith entered "Group Policy Number 74A04Q2649" and her name "Velma Smith", the responding message came back "NOT RECOGNIZED."

20.     When inquiring by telephone to the phone number listed by Transamerica in Plano, Texas on the credit card statement and the telephone number in Cedar Rapids, Iowa, Transamerica representatives denied that Plaintiff was an insured and that Group Policy Number 74A04Q2649

---

[1]   Explain My Benefits,  https://www.explainmybenefits.com/  (last visited Feb. 21, 2023). Also "Transamerica Accident Plan Benefits" (.pdf), ref. video: "How accident insurance works.")

existed, representing again to Plaintiff that both her name and the policy number were "NOT RECOGNIZED."

21.     On August 11, 2021, written correspondence was sent to Transamerica's Claims Department requesting recognition of the policy shown on Plaintiff's monthly credit card statement and of Plaintiff as an insured thereunder, as well as a copy of her policy. *See* copy of correspondence from Plaintiff's counsel attached hereto as Exhibit B. No reply was received in response to the letter.

22.     On September 20, 2021, written correspondence was sent to the attention of the division counsel listed on Transamerica's website, at the address shown thereon, recapping Smith's prior efforts to make a claim under the policy. *See* copy of correspondence from Plaintiff's counsel to Frank A. Camp, Esq., Division Counsel, Transamerica Corporation, attached hereto as Exhibit C. No reply was received in response to the letter.

23.     Attempts to give notice to Transamerica's authorized agents electronically, telephonically, and by United States mail contained sufficient information to identify Smith as an insured and amounted to notice to Transamerica pursuant to Miss. Code Ann. §83-9-5(1)(e) providing that same "shall be deemed notice to the insurer."

24.     On or about October 25, 2021, an oral consumer complaint was made to the Mississippi Department of Insurance against Transamerica Life Insurance Company concerning Plaintiff's efforts to make a claim under Group Policy Number 74A04Q2649. On information and belief, on or about October 28, 2021, senior staff counsel for the Mississippi Department of Insurance communicated Plaintiff's consumer complaint to Transamerica.

25.     With undated cover correspondence from Blake Bostwick, President, Transamerica Life Insurance Company, addressed to Plaintiff at her residence address in Clinton, Mississippi,

were enclosed the contract and a summary of the coverage, including the following: (a) Transamerica Life Insurance Company Certificate of Insurance for Group Accident Hospital Insurance policy issued to "JC Penney Corporation (the JC Penney Credit Cardholder Group)" shown as Policy No. 25451 GC939; and (b) Group Accident Hospital Benefit Summary, attached hereto as combined Exhibit D.

26.     Written correspondence addressed to Plaintiff, dated November 2, 2021, enclosing a Statement of Insurance, was received sometime later. *See* correspondence from Transamerica to Plaintiff, with reference enclosure attached hereto as Exhibit E.

27.     Written correspondence addressed to Plaintiff's counsel at Upshaw Williams LLP, dated November 5, 2021, listed information for a "claim review." *See* correspondence from Transamerica to Plaintiff's counsel, with referenced enclosure attached hereto as Exhibit F.

28.     By written correspondence from TCS e-Serve International Limited (hereinafter "TCS"), an entity which represented itself to be the third-party administrator for Transamerica dated November 10, 2021 to the Legal Division, Mississippi Insurance Department, Transamerica provided copies of the afore-described letters to Plaintiff and her counsel, dated November 2 and November 5, respectively. *See* correspondence from Judy Bates, Transamerica Intermediate Compliance Analyst, to Phillips Strickland, Senior Attorney, with referenced letter enclosures, attached hereto as Exhibit G.

29.     In its November 10, 2021 correspondence to Mr. Strickland, Transamerica's third-party administrator TCS concluded that no consumer complaint was opened "in [its] complaint tracking system" because "we do not consider this [to be] a complaint but an inquiry." *See* Exhibit G.

30.     For the lack of explanation for denial of coverage, delay in recognizing the existence of the JCPenney group hospital indemnity insurance policy, delay in recognizing the name of a group policy listed on the credit card statement showing customer as an insured under the policy, delay in producing the policy, a completed Consumer Complaint Form was prepared and submitted to the Mississippi Insurance Department on December 6, 2021. *See* Consumer Complaint Form ("Company Complaint"), attached hereto as Exhibit H.

31.     On December 7, 2021, Plaintiff's counsel sent a claim letter to Transamerica with Transamerica's claims form executed by Plaintiff and with supporting documents for her claim and specific instructions that the loss/benefits payments be sent to Plaintiff's counsel and that any further that "[a]ny further contact with Mrs. Smith [ ] be made through [the] law firm only." *See* correspondence from Plaintiff's counsel to Transamerica Life Insurance Company, with pertinent reference exhibits attached hereto as Exhibit I.

32.     Written correspondence from the Mississippi Insurance Department to Plaintiff acknowledged her consumer complaint. *See* December 15, 2021 correspondence from Nyana Griffis to Plaintiff attached hereto as Exhibit J.

33.     Disregarding the instructions from Plaintiff's counsel, Transamerica sent a payment to Plaintiff directly, without notice to her counsel.

34.     By written correspondence dated December 23, 2021, Transamerica, through TCS, responded to the Mississippi Insurance Department about Plaintiff's consumer complaint, incorrectly contending that the consumer complaint had been "resolved;" a copy of the insurance policy was produced hereto as Exhibit D. *See* December 23, 2021 correspondence from Judy Bates, Transamerica Intermediate Compliance Analyst, to Nyana Griffis, Consumer Services Specialist II, with referenced enclosures attached hereto as Exhibit K.

35.     The statement made by Transamerica to the Mississippi Department of Insurance was inaccurate in that the consumer complaint by Plaintiff had not been resolved.

36.     Transamerica's representation that the matter had been resolved was an intentional act to cover its practice of claim denial and coverage denial, including that which had been used in response to and experience by Plaintiff in her attempts to make a claim for benefits under Group Policy Number 74A04Q2649.

37.     The Transamerica Life Insurance hospital indemnity policy issued to JCPenney credit card holder Plaintiff under Group Policy Number 74A04Q2649 provided benefits if the following criteria were met: (1) the insured was involved in an accident; (2) the insured was injured in the accident; (3) the insured was transported by emergency ambulance to a hospital for care and treatment as a result of the accident; (4) the insured was admitted to the hospital emergency room as a result of the accident; and (5) the insured was admitted to the hospital as a patient with overnight stay.

38.     On or before August 11, 2021, attempts were made to file a claim, with the above coverage criteria having been met for benefits under Transamerica's hospital indemnity policy.

39.     Purchasers of Accident and Health and similar insurance policies are unsophisticated purchasers.

40.     Transamerica knew or should have known that its failure to recognize an insured's name, including but not limited to the name of Plaintiff, and the group policy number shown on JCPenney credit card statements, including Plaintiff's, would likely result in confusion of unsophisticated insureds and deter insureds from pursing their claims, thereby effectively reducing Transamerica's exposure to pay legitimate claims, including Plaintiff's.

41.     By not recognizing the JCPenney credit card customer group policy number and claims telephone number shown on JCPenney credit card statements, at its online website, at telephone numbers for claims representatives in Plano, Texas, and Cedar Rapids, Iowa, and by ignoring direct written requests for information, Transamerica, Simon Property Group, and Brookfield Asset Management acted in a manner reflecting a pattern and practice used to avoid claims by group policy insureds who were JCPenney credit card holders.

42.     By its responses, and lack of responses to Plaintiff's efforts made based on information contained on her JCPenney credit card statement, Transamerica, Simon Property Group and Brookfield Asset Management arbitrarily, in bad faith and/or in a grossly negligent manner, effectively denied that Plaintiff was an insured or that the group hospital indemnity insurance even existed.

43.     Not until the Mississippi Department of Insurance notified Transamerica of Plaintiff's consumer complaint did Transamerica verify recognition of Group Policy Number 74A04Q2649 and Plaintiff as being an insured under said policy.

44.     Logically, if Transamerica did not recognize group policy number 74A04Q2649 to be valid when efforts were made to file a claim on the Transamerica claims website; at the 800 telephone claims number for Plano, Texas, shown on the JCPenney credit card billing statement; at the 888 telephone number for Transamerica Claims in Iowa; and when written correspondence was sent to the Transamerica Claims Office in Iowa, with no response, and to its Corporate Counsel's Office, to the attention of Division Counsel, it appears that other JCPenney credit card holders insured under Transamerica's group policy Number 74A04Q2649 as well as other group policies likely attempted to make legitimate claims, simply to be ignored like Plaintiff.

45.     Defendants' acts and omissions with respect to Smith's claim, demonstrating automatic denial without good faith investigation, delay and withholding benefits, appear to not be isolated but rather part of a pattern and practice.  Investigation of Plaintiff's claim has revealed that Defendants have a long and extensive history of denying and/or delaying claims and under-paying. Defendants' unlawful delay and denial of claims constitute a pattern and practice of improper claims handling. Defendants' use of third-party administration to deter Plaintiff represents a broader efforts by Defendants to effectively collect premiums without reasonably and lawfully investigating, adjusting and paying insureds' claims.

46.     Defendants' pattern of practice reflects an intentional effort to deny or delay proper claims, or in the alternative, grossly negligent practices. Defendants' intentional conduct includes directing insureds to third-party administrators which intentionally or grossly negligently delay and/or deny claims; using computerized claims handling procedures which intentionally or grossly negligently delay and/or deny claims by reporting that the insureds' policies and/or names cannot be located; use of electronic websites and telephone systems which intentionally or grossly negligently delay and/or deny claims; use of computerized systems in place of reasonable and competent claims handling.

47.     Defendants' claims handling practices are contrary to insurance law, which require insurers and their agents to timely conduct a reasonable investigation, adjust claims and make determination of coverage and timely pay the claims. Defendants' actions and omissions constitute not only breach of contract, but also breach of the implied covenant of good faith and fair dealing.

## AMOUNT IN CONTROVERSY

48.     The amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

### A.     Damages and Injunctive Relief Class

49.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this lawsuit as a class action on behalf of herself and on behalf of all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Only to the extent it is a requirement under applicable law, the class is ascertainable.

50.     The proposed class that Plaintiff seeks to represent is defined as follows:

> All persons and legal entities insured under a Transamerica group policy who attempted to make claims and whose claims were prevented or delayed by Defendants' custom and practices related to Transamerica's policies.

51.     Plaintiff reserves the right to amend the definition of the proposed class. The following persons are expressly excluded from the Class: (1) Defendants and their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff.

52.     Members of the putative class as defined all have Article III standing as all such persons and entities were prevented from making claims under their group policy. However, policyholders who have been subsequently paid after delay by Defendants still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, i.e., interest.

53.     The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiff reasonably believes that thousands of people geographically dispersed across the United States have been damaged by Defendants' actions. The names and addresses of the members of the proposed class are readily identifiable through records maintained by Defendants or from information readily available to Defendants.

54.     The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

55.     Defendants have acted on grounds generally applicable to the proposed class in that Defendants routinely denied the existence of group policies of insurance or that insureds' names were found in Defendants' records. It is reasonable to expect that Defendants will continue to engage in the pattern and practice of denying the existence of group policies and information on insureds' names absent a decision by the Court.

56.     Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

a.  Whether Defendants' failure/refusal to identify group policies and/or insureds represents a custom and practice constituting negligent claims handling;

b.  Whether Defendants' failure to identify group policies and/or insureds making claims represents a custom and practice constituting intentional conduct to deny claims;

c.  Whether Defendants have a custom and practice of willfully discouraging insureds from making claims;

d.  Whether Plaintiff and members of the proposed class have been damaged as a result of Defendants' practices;

e.  Whether Plaintiff and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act;

f.  Whether Plaintiff and members of the proposed class are entitled to equitable relief in the form of specific performance, unjust enrichment, declaratory relief or restitutionary damages;

g.  Whether Plaintiff and members of the proposed class are entitled to punitive damages; and

h.  Whether Plaintiff and members of the proposed class are entitled to attorney's fees and intermediate damages.

57.     Plaintiff's claims are typical of the claims of all proposed class members, as they are all similarly affected by Defendants' custom and practice concerning handling group policy claims Further, Plaintiff's claims are typical of the claims of all proposed class members because her claims arise from the same practices and course of conduct that give rise to the claims of the class members and are based on the same factual and legal theories. Plaintiff is not different in any material respect from any other member of the proposed class.

58.     Plaintiff and her counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the proposed class they seek to represent. Plaintiff has retained counsel who are competent and experienced in class action and insurance litigation. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

59.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed class members in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if proposed class members had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

60.     In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiff and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

61.     Questions of law or fact common to Plaintiff and the proposed class members, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amounts due to many individual proposed class members are likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual proposed class members to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by Defendants' unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

62.     Class certification is further warranted because Defendants have acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

        **B.      Mississippi Class**

63.     Plaintiff seeks, in the alternative or prior to certification of a Mississippi Damages and Injunctive Relief Class, a Mississippi Issues Class.

64.     In addition, Plaintiff seeks in the alternative, an Issues Class under Rule 23(c)(4) which provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

65.     In an effort to materially advance the litigation as a whole, pursuant to Rule 23(c)(4), Plaintiff brings this action on behalf of herself and of all others similarly situated to resolve, inter alia, several important issues:

 a.  Whether Defendants' custom and practice of failing to identify group policies and insureds constitutes negligent claims handling;

 b.  Whether Defendants' failure to identify group policies and/or insureds making claims represents a custom and practice constituting intentional conduct to deny claims;

 c.  Whether Defendants have a custom and practice of willfully discouraging insureds from making claims;

 d.  Whether Plaintiff and members of the proposed class have been damaged as a result of Defendants' practices;

 e.  Whether Plaintiff and members of the proposed class are entitled to equitable relief in the form of specific performance, unjust enrichment, declaratory relief or restitutionary damages;

 f.  Whether Plaintiff and members of the proposed class are entitled to punitive damages; and

 g.  Whether Plaintiff and members of the proposed class are entitled to attorney's fees and intermediate damages.

 h.  Whether Plaintiff and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act; and

 i.  Whether any of Defendants' potential affirmative defenses apply in whole or in part.

66.     The Issues Class would be "carved at the joints" after disposition of the preliminary questions concerning Defendants' liability for breaching its contractual duty to pay Plaintiff and

members of the proposed class their claims by unlawfully discouraging claims and delaying payment. The individual class members would then be able to rely upon the preclusive effect of the determination that Defendants' custom and practice of denying the existence of policies and/or denying or delaying claims is unlawful to then individually litigate specific issues such as damages. Alternatively, the Court could thereafter certify a Mississippi Damages and Injunctive Relief Class.

67.     The Issues Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy.

68.     Individual joinder of the members of the Issues Class would be wholly impracticable. As previously stated, Plaintiff reasonably believes that thousands of people geographically dispersed across Mississippi have been damaged by Defendants' conduct as described herein. Thus, the numerosity element for class certification is met.

69.     Questions of law and fact are common to the Issues Class. As this is an issues class under Rule 23(c)(4), there are by definition common questions of law applicable to all class members.

70.     Plaintiff's claims are typical of the Issues Class because her claims arise from the same course of conduct by Defendants, i.e., its uniform custom and practice of denying or delaying payment of claims. Plaintiff's claims are, therefore, typical of the Issues Class.

71.     Plaintiff will fairly and adequately represent and protect the interests of the Issues Class. Her interest in vindicating these claims is shared with all members of the Issues Class and there are no conflicts between the named Plaintiff and the putative class members. In addition,

16

Plaintiff is represented by counsel who are competent and experienced in class action litigation and also have no conflicts.

72.     The Issues Class is properly brought and should be maintained as a class action under Rule 23(b) because an issues class action in this context is superior. Pursuant to Rule 23(b)(3), common issues predominate over any questions affecting only individual class members. Proceeding with an issues class is superior to other methods for fair and efficient adjudication of this controversy because, inter alia, such treatment will allow a large number of similarly-situated policyholders to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties. The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

## COUNT I

## BREACH OF CONTRACT

73.     Plaintiff restates and incorporates by reference all preceding allegations.

74.     Defendants entered into policies of insurance with Plaintiff and members of the proposed class. These insurance policies govern the relationship between Defendants, Plaintiff and members of the proposed class, as well as the manner in which claims for covered losses are handled.

75. The policies of insurance between Defendants and Plaintiff and the other proposed class members are binding contracts under Mississippi law, supported by valid consideration in the form of premium payments in exchange for insurance coverage.

76. Defendants drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation.

77. In order to receive claim payments, Plaintiff complied with all material provisions and performed all of their respective duties with regard to their insurance policy.

78. Defendants breached their contractual duty to timely adjust the claims and pay Plaintiff and members of the proposed class.

79. Defendants' actions in breaching its contractual obligations to Plaintiff and members of the proposed class benefited and continue to benefit Defendants. Likewise, Defendants' actions damaged and continue to damage Plaintiff and members of the proposed class.

80. Additionally, Defendants breached the Policy by failing and refusing to promptly pay the amounts individually owed to Plaintiff as required by the terms of the Policy.

81. Defendants' actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiff and members of the proposed class.

82. In light of the foregoing, Plaintiff and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts Defendants unlawfully withheld or interest for untimely delay in payment.

83. Plaintiff and members of the proposed class seek any and all relief as may be permitted under Mississippi law to remedy the ongoing breaches of contract.

## COUNT II

## NEGLIGENCE AND/OR GROSS NEGLIGENCE

84.   Plaintiff restates and incorporates by reference all preceding allegations.

85.   Defendants had a duty under Mississippi law and pursuant to the Policy to fully, fairly, adequately and correctly investigate and adjust Plaintiff's loss and claim.

86.   Defendants breached that duty in the following non-exclusive particulars:

    a.   By failing to conduct a reasonable and lawful adjustment of Plaintiff and the proposed class members' claims;

    b.   By refusing to fully pay Plaintiff and the proposed class members' claims without conducting a complete, adequate, full, and fair investigation and adjustment of Plaintiff's claim under the Policy;

    c.   By failing to fully and appropriately pay Plaintiff and the proposed class members for their loss; and

    d.   By other acts and omissions to be proven at trial.

87.   Such conduct as alleged above constitutes negligence, gross negligence, and/or reckless disregard for Plaintiff and the proposed class members' rights as insureds.

88.   Defendants' negligent, grossly negligent, and/or reckless adjustment proximately caused Plaintiff economic damages, including attorney's fees and litigation expenses.

## COUNT III

## BAD FAITH

89.   Plaintiff restates and incorporates by reference all preceding allegations.

90.   Defendants had a duty to exercise good faith in dealing with Plaintiff. Defendants' failure and refusal to pay the amounts contractually owed to Plaintiff and the proposed class members was arbitrary and capricious and constitutes bad faith. Defendants' actions constitute the independent tort of bad faith refusal to pay an insurance claim in that Defendants failed to properly adjust and fully pay covered insurance claims without legitimate or arguable reason for doing so.

91.   The bad faith of Defendants is evidenced by the fact that, at all times hereto, Defendants failed or refused to timely and reasonably identify group policies and insureds and

timely and reasonably pay legitimate claims of insureds. Nevertheless, acting with conscious disregard for Plaintiff and the proposed class members' rights and with the intention of causing or willfully disregarding the probability of causing unjust hardship on Plaintiff and the proposed class members, Defendants willfully refused to fully pay Plaintiff and the proposed class members' valid claims and withheld monies and benefits rightfully due them. Defendants were obligated to fully pay Plaintiff and the proposed class members for their damages associated with the admittedly covered loss but failed to do so, Defendants lacked an arguable or legitimate basis in law and fact for its refusal and failure to fully pay Plaintiff and the proposed class members for their losses, and Defendants knew there was no arguable, legitimate, or justifiable basis for its refusal and failure to fully pay Plaintiff and the proposed class members for their losses. Further, Defendants acted with malice and/or gross negligence/reckless disregard to Plaintiff and the proposed class members' rights under the Policy and existing law.

92.     At all material times, Defendants owed to Plaintiff and the proposed class members as policyholders, claimants and insureds under the Policy, non-delegable, express, and implied duties, to at all times and in all things, act in good faith and with fair dealing toward Plaintiff and the proposed class members. Along with the implied duty of good faith and fair dealing, Defendants owed at all times a duty to: (1) meet the reasonable expectations of Plaintiff as policyholder; (2) investigate and pay the claim with the interest of the insured in mind and keeping the insured informed every step of the way; (3) give as much if not greater consideration to the financial interests of the insured, than it gave to its own financial interests; and (4) perform a prompt and adequate investigation and make a reasonable, good faith payment based on that investigation.

93.     Defendants breached the aforementioned duties, including the overarching duty to exercise good faith and fair dealing with Plaintiff and the proposed class members as policyholders, claimants and insureds. Defendants' bad faith is evidenced by all of the facts and allegations set forth above in this Complaint, together with the following non-exclusive actions or inactions by Defendants which were perpetuated with evil motive or with reckless indifference to the rights of Plaintiff and the proposed class members:

     a.  Defendants' intentional or reckless failure to attempt in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff and the proposed class members' claims when liability and the amount owed was reasonably clear;

     b.  Defendants' intentional or reckless refusal to pay Plaintiff and the proposed class members' claims and to otherwise honor its obligations under the Policy;

     c.  Defendants' intentional or reckless refusal to fully and fairly investigate and pay Plaintiff and the proposed class members' claims;

     d.  Defendants' intentional or reckless failure to properly adjust Plaintiff and the proposed class members' claims, and to pay Plaintiff and the proposed class amounts owed to them for their losses;

     e.  Defendants' intentional or reckless failure to fully inform Plaintiff and the proposed class members of their rights under the subject insurance policy;

     f.  Defendants' intentional or reckless concealment from Plaintiff and members of the proposed class its practice of denying policies and delaying payment of claims;

     g.  Defendants' intentional or reckless failure to pay all amounts due and owing under the Policy with no reasonable or justifiable basis; and

     h.  Other acts and omissions to be proven at trial.

94.     Defendants' breach of the duty to exercise good faith and fair dealing was the direct and proximate cause of actual damages sustained by Plaintiff.

95.     Defendants knew, or reasonably should have known, that Plaintiff and the proposed class members were justifiably relying on the money and benefits due them under the terms of the subject insurance policies. Nevertheless, acting with conscious disregard for the rights of Plaintiff and the proposed class members and with the intention of causing or willfully disregarding the

probability of causing unjust and cruel hardship, Defendants consciously refused to fully compensate Plaintiff and the proposed class members for their losses and withheld monies and benefits rightfully due Plaintiff and the proposed class members. In so acting, Defendants intended to and did injure Plaintiff and the proposed class members in order to protect its own financial interests.

96.     As a result of Defendants' breach of the duty to exercise good faith and fair dealing and bad faith denial of full and prompt payment as required by the law and the policy, Plaintiff is entitled to a judgment against Defendants for actual, compensatory, consequential, bad faith, and punitive damages, plus court costs, attorney's fees, and pre- and post-judgment interest at the legally allowable limit.

## COUNT IV

## BREACH OF DUTY TO THIRD-PARTY BENEFICIARY

97.     Plaintiff restates and incorporates by reference all preceding allegations.

98.     Upon information and belief, a contract was entered into between Transamerica and TCS and the class.

99.     Plaintiff is a third-party beneficiary of the contract between Defendants Transamerica and TCS and the class members. All Defendants acted in concert with TCS related to the functions TCS performed related to class members' insurance policies and all Defendants asserted control over TCS's actions so as to make TCS a mere instrumentality of the other Defendants.

100.    Had TCS and the other Defendants acting in concert properly performed the duties and functions of the contract between them and Plaintiff and the class, rather than performing the

wrongful actions and omissions outlined in this complaint, Plaintiff and the class members would not have been damaged by those wrongful actions and omissions as they have been.

101.    Plaintiff and the class members are entitled to recover damages as a result of the breach of the contract between TCS and the other Defendants and Plaintiff and the class. Plaintiff and the class have been actually damaged in the manner described herein and as a direct and proximate result of the actions and omissions of TCS and the other Defendants in breaching the requirements of their contract with Plaintiff and the class. The damages of the class member from the alleged conduct exceeds $5,000,000.00, with more future damages to result.

## COUNT V

## DECLARATORY JUDGMENT AND RELIEF

102.    Plaintiff restates and incorporates by reference all preceding allegations.

103.    This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless of whether or not further relief is or could be claimed.

104.    A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

105.    Plaintiff and members of the proposed class have complied with all relevant conditions precedent in their contracts.

106.    Plaintiff seeks, personally and on behalf of the proposed class, a declaration that Defendants custom and practices in in denying and delaying payment of claims is unlawful and in breach of contractual duties owed to Plaintiff and the class.

107.    Plaintiff further seeks, personally and on behalf of the proposed class, any and all equitable relief available under the law that the Court deems necessary and proper to the

administration of justice, including, but not limited to, identifying and locating policyholders, and notifying the same of the circumstances complained of and the restoration of their rights and remediation of their losses, and preclusion by Defendants from engaging in the conduct described herein, as may be permitted by law.

108.    Plaintiff and members of the proposed class have suffered injuries.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Velma Smith, individually and on behalf of all others similarly situated, respectfully requests that this Court:

1.  Enter an order certifying this action as a class action under Rule 23(a), (b)(2), (b)(3) and/or (c)(4), appointing Plaintiff as the representatives of the class, and appointing David McMullan, Jr., W. Hugh Gillon IV, Richard C. Williams, Jr. and Gary Yarborough as counsel for the class;

2.  Enter a declaratory judgment, declaring that Defendants' practice of custom and practice is contrary to and breaches the insurance policies issued to Plaintiff and members of the class;

3.  Enter a preliminary and permanent injunction and equitable relief against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the policies, practices, customs, and usages complained of herein;

4.  Enter an order that Defendants specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of their past and present practices complained of herein;

5.  Award compensatory damages to Plaintiff, and other class member insureds, for her individual claims for the amount she is owed pursuant to the Policy as a result of the Loss;

6.  Award prejudgment interest on all such sums, to Plaintiff and members of the class;

7.  Award extra-contractual damages for Defendants' willful, wanton, reckless, grossly negligent, and bad faith conduct, which rose to the level of an independent tort;

8.  Award punitive and exemplary damages for Defendants' tortious, malicious, willful, wanton, reckless, grossly negligent, and bad faith conduct which arose to the level of an independent tort;

9.  Award reasonable attorney's fees;

10. Award costs, expenses, and disbursements incurred herein by Plaintiff and members of the class;

11. Award pre- and post-judgment interest; and

12. Grant such further and additional relief as the Court deems necessary and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 5, 2023.

By: /s/ *David M. McMullan, Jr.*
David M. McMullan, Jr. (MSB# 8494)
BARRETT LAW GROUP, P.A.
404 Court Square
Lexington, Mississippi 39095
Telephone: (662) 834-2488
Fax: (662) 834-2628
dmcmullan@barrettlawgroup.com

Gary Yarborough, Jr. (MSB #102310)
Yarborough Law Firm, PLLC
P.O. Box 4168
Bay Saint Louis, MS 39521
Tel: (228) 342-7987
Fax: (662) 834-2628
Gary@yarboroughlaw.co

W. Hugh Gillon, IV (MSB# 8947)
Richard C. ("Chip") Williams, Jr. (MSB# 7256)
UPSHAW, WILLIAMS, BIGGERS AND BECKHAM
713 S. Pear Orchard Road, #102
P.O. Box 3080
Ridgeland, MS 39157
Telephone: (601) 978-1996
Fax: (601) 978-1949
hgillon@upshawwilliams.com
cwilliams@upshawwilliams.com