UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

VELMA SMITH, individually and on behalf                    PLAINTIFF
of all others similarly situated

V.                                    CIVIL ACTION NO. 3:23-CV-357-KHJ-MTP

TRANSAMERICA CORPORATION, et al.                          DEFENDANTS

ORDER

Before the Court are four motions to dismiss by Defendants Penney OpCo

LLC (OpCo), [47]; TCS e-Serve International Limited (TCS e-Serve), [49];

Transamerica Life Insurance Company and AEGON Direct Marketing Services,

Inc., [55]; and Tata American International Corporation (TAIC), [78]. The Court

grants each motion and dismisses the [41] Amended Complaint.

I.      Background

This case arises from an insurance dispute. In 2013, JCPenney offered its

credit card holders an opportunity "to purchase a group hospital indemnity policy

issued by Transamerica" Life Insurance Company. [41] ¶ 15. The policy would cover

medical bills and out-of-pocket expenses if the insured met the following criteria:

    (1) the insured was involved in an accident;

    (2) the insured was injured in the accident;

    (3) the insured was transported by emergency ambulance to a hospital
        for care and treatment as a result of the accident;

    (4) the insured was admitted to the hospital emergency room as a result
        of the accident; and

(5) the insured was admitted to the hospital as a patient with an overnight stay.

*Id.* ¶ 40; *see also id.* ¶ 18. Plaintiff Velma Smith accepted the offer and became an insured under the group policy. *Id.* ¶ 16. Each month, Smith paid her premium through her JCPenney credit card, which described her policy information as:

TRANSAMERICA LIFE PLANO TX
www.transamerica-jcp.com
HOSPITAL POLICY
POLICY # 74A04Q2649

Credit Card Statement [1-1]; *see also* [41] ¶¶ 16–17. The policy number shown on the JCPenney-issued credit card statement, however, differed from the group policy number listed in the Transamerica insurance contract. *Compare* [1-1], *with* Dec. 23, 2021, Correspondence [1-11] at 6. The contract listed the group policy number issued to JCPenney as "25451 GC939" and Smith's individual certificate number as "74A04Q2649." [1-11] at 6; *see also* [41] ¶ 28.

On May 26, 2021, Smith "sustained serious injuries" in a car accident. [41] ¶ 20. Her injuries required "emergency transport" to a hospital "where she was treated in the emergency room and admitted as a patient . . . for [an] overnight stay." *Id.* Appearing to satisfy each of the policy requirements, Smith "attempt[ed] to make a claim under the group policy sometime on or before August 11, 2021, using . . . Transamerica's website." *Id.* ¶ 22. She entered the policy number shown on her JCPenney credit card statement—74A04Q2649—and her name. *Id.* The system responded with the message "NOT RECOGNIZED." *Id.* She then called the phone number listed on her credit card statement, but the representative said that

both the group policy number and name "were 'NOT RECOGNIZED.'" *Id.* ¶ 23. That same day, she sent "written correspondence" to "Transamerica's Claims Department requesting recognition of the policy shown on [Smith's] credit card statements," that Smith was "an insured thereunder, as well as a copy of her policy." *Id.* ¶ 24 (citing Aug. 11, 2021, Correspondence [1-2]). Smith says she received no reply. *Id.*

On September 20, 2021, Smith sent "written correspondence" to "the division counsel listed on . . . Transamerica's website, at the address shown . . . recapping [her] prior efforts to make a claim under the policy." *Id.* ¶ 25 (citing Sept. 20, 2021, Correspondence [1-3]). Again, she received no response. *Id.* So "[o]n or about October 25, 2021," Smith made "an oral consumer complaint . . . to the Mississippi Department of Insurance against" Transamerica concerning her "efforts to make a claim under Group Policy Number 74A04Q2649." *Id.* ¶ 27. On October 28, 2021, the Mississippi Department of Insurance notified Transamerica of Smith's oral complaint. *Id.*

Five days later, Transamerica's president mailed Smith her policy "contract and a summary of the coverage[.]" *Id.* ¶ 28 (citing Correspondence [1-4]); *see also* Dec. 7, 2021, Correspondence [1-9] (acknowledging receipt of the letter from Transamerica's president on November 2, 2021). On November 2, 2021, Transamerica also sent Smith a "Statement of Insurance" to show "evidence that a policy/certificate was issued by the Company." *Id.* ¶ 29 (citing Nov. 2, 2021, Correspondence [1-5]); [1-5] at 1. Transamerica explained:

> [This Statement] is to provide you with important facts about your policy/certificate and a summary of your benefit information. This

3

Statement does not change or modify the benefits, terms, or provisions of your policy/certificate in any manner.

[1-5] at 1. The attached Statement of Insurance reiterated the same information listed above and then identified the "principal insured" as "Velma Smith" and the "policy number" as "74A04Q2649." *Id.* at 2.

Three days later, on November 5, 2021, Transamerica sent Smith's attorney "written correspondence" listing information for filing a claim. [41] ¶ 30 (citing Nov. 5, 2021, Correspondence [1-6]). The letter included the following information:

November 5, 2021

Insured's Name: Velma Smith
Policy Number: 74A04Q2649
Claim Number: n/a

Dear [Smith's Attorney]:

This letter is in reference to my telephone conversation with [your office] on November 4, 2021.

It is my understanding that your office would like to file a claim for our above[-]named insured, Velma Smith. Please provide the following information:

- Completed claim forms
- Copy of complete Policy/Accident Report
- Proof of emergency treatment showing treatment date and accident diagnosis
- Proof of any dates of hospital confinement due to accident
- Proof of any dates of Intensive Care Unit confinement due to accident
- Signed Medical Authorization Release

Upon receipt of the requested information, we will be glad to further review the claim.

[1-6] at 1. The letter included blank forms for submitting a claim. *See id.* at 2–3.

On December 6, 2021, Smith submitted a "completed Consumer Complaint Form" to the Mississippi Insurance Department. [41] ¶ 33 (citing Consumer Compl.

4

[1-8]). The next day, Smith sent her claim letter, completed claim forms, and "supporting documents for her claim" to Transamerica. *Id.* ¶ 34 (citing [1-9]). Transamerica then "sent a payment to [Smith] directly." *Id.* ¶ 36.

Smith now brings claims on behalf of herself and a putative class for breach of contract, negligence, bad faith, breach of duty to a third-party beneficiary, and declaratory judgment and injunctive relief. *See id.* ¶¶ 87−122. According to her:

> [I]f Defendant Transamerica did not recognize group policy number 74A04Q2649 to be valid when efforts were made to file a claim on Defendant Transamerica's claims website; at the 800 telephone claims number for Plano, Texas, shown on Defendant JCPenney's credit card billing statement; at the 888 telephone number for Transamerica claims in Iowa; and when written correspondence was sent to the Transamerica Claims Office in Iowa, with no response, and to its Corporate Counsel's Office, to the attention of Division Counsel, it appears that other JCPenney credit card holders insured under Defendant Transamerica's group policy number 74A04Q2649 as well as other group policies likely attempted to make legitimate claims, simply to be ignored like Plaintiff.

*Id.* ¶ 47. Defendants move to dismiss Smith's Amended Complaint. As relevant here, OpCo and TAIC move to dismiss under Rule 12(b)(1) for lack of personal jurisdiction. [47]; [78]. TCS e-Serve, AEGON, and Transamerica move to dismiss under Rule 12(b)(6) for failure to state a claim. [49]; [55]. The Court briefly addresses the class allegations before turning to each motion to dismiss.

## II.    Class Allegations

Although Smith's Amended Complaint raises class allegations, no party has sought class certification under Rule 23(c)(1). And the Court need not address certification before ruling on Defendants' motions to dismiss.

A court should address class certification at "an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). "The word 'practicable' imports some leeway in determining the timing of such a decision." *Danny B. ex rel. Elliott v. Raimondo*, 784 F.3d 825, 837 (1st Cir. 2015). Thus, "[i]t is well within a district court judge's discretion to dispose of a motion to dismiss before acting on class certification." *Lawson v. FMR LLC*, 554 F. Supp. 3d 186, 192 (D. Mass. 2021); *see also Pharo v. Smith*, 621 F.2d 656, 663–64 (5th Cir. 1980) (affirming summary judgment for defendant even though no ruling had been made as to class certification); *E.B. v. Landry*, No. 19-862, 2020 WL 6439503, at *2 (M.D. La. June 30, 2020) (finding that the plaintiffs' motions to certify were premature because the court had not ruled on pending motions to dismiss).

A court should consider two factors when deciding whether to rule on a dispositive motion before addressing class certification. *Lawson*, 554 F. Supp. 3d at 192–93 (citing *Wright v. Schock*, 742 F.2d 541, 544–45 (9th Cir. 1984)). First, "whether an early resolution on the merits 'protect[s] both the parties and the court from needless and costly further litigation.'" *Id.* (quoting *Wright*, 742 F.2d at 544). "[A]nd second, whether the ruling would prejudice any of the parties." *Id.*

Here, both factors are met. First, because Smith's claims fail as a matter of law, the costly and time-intensive determination of class certification is avoided for both the Court and the parties. *See id.* at 193 (citing *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 647 n.2 (S.D.N.Y. 2006)). Second, Smith suffers no unfair prejudice because, even if the Court certified the class, her claims would still fail as a matter

6

of law. And Defendants suffer no unfair prejudice because they have "effectively consented to this approach by filing the[ir] motion[s] to dismiss . . . without requesting class certification." *See id.* (citing *Rodriguez v. Banco Cent.*, 790 F.2d 172, 175 (1st Cir. 1986)).

III.    Motions to Dismiss for Lack of Personal Jurisdiction

OpCo and TAIC move to dismiss for lack of personal jurisdiction. [47]; [78]. Smith therefore "bears the burden of establishing the district court's jurisdiction over the defendant[s]." *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999) (citation omitted). When a "district court rules on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing," a plaintiff need only make "a prima facie case that personal jurisdiction is proper." *Quick Techs., Inc. v. Sage Grp., PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quotation omitted). "In making its determination, the district court may consider the contents of the record before the court at the time of the motion, including 'affidavits . . . or any combination of the recognized methods of discovery.'" *Id.* at 344 (quoting *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)).

The Court "must accept as true [the plaintiff's] uncontroverted allegations, and resolve in its favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). Ultimately, a district court sitting in diversity may assert jurisdiction if (1) the forum state's long-arm statute confers personal jurisdiction and (2) exercising jurisdiction does not exceed the boundaries of the Fourteenth

Amendment's Due Process Clause. *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997). The Court considers OpCo's motion first.

A.  OpCo

OpCo makes no argument for whether the Mississippi long-arm statute applies. Instead, OpCo claims that exercising personal jurisdiction would be unconstitutional. *See* [47] ¶ 2. The Court therefore assumes Mississippi's long-arm statute permits jurisdiction and considers only the constitutional component of the personal jurisdiction analysis.

1.  General Jurisdiction

"When determining the scope of general personal jurisdiction over a limited liability company ('LLC'), the Fifth Circuit conducts the same inquiry as it does for corporations." *Laday v. Roderick*, No. 1:22-CV-261, 2023 WL 2188706, at *2 (E.D. Tex. Feb. 23, 2023) (citing *Frank v. P N K (Lakes Charles) L.L.C.*, 947 F.3d 331, 336–38 (5th Cir. 2020)). "'[G]eneral jurisdiction' allows all kinds of suits against [an LLC], but only in States where the [LLC] is [organized] or has its 'principal place of business.'" *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 137 (2023) (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024–25 (2021)). Only in an "exceptional case" may a court exercise general jurisdiction over an LLC in a different forum. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017). To qualify as an "exceptional case," the party asserting jurisdiction must show that the LLC's "operations . . . [are] so substantial and of such a nature as to render the [LLC] at home in that state." *Id.* (quotation omitted). Proving such an exceptional case is

8

"incredibly difficult." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

It is undisputed that "OpCo is a Virginia limited liability company with a principal place of business in Texas." *See* [47-1] ¶ 3; [41] ¶ 6 (identifying OpCo only as "a limited liability company admitted to do business in Mississippi"). So this Court may only exercise general jurisdiction over OpCo if its "operations in [Mississippi are] 'so substantial and of such a nature as to render [OpCo] at home in [Mississippi].'" *BNSF Ry. Co.*, 581 U.S. at 413 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014)).

Smith argues general jurisdiction is proper because:

> OpCo is registered to do business in the state of Mississippi; it has a registered agent for service of process in Mississippi; it owns/operates six brick-and-mortar stores physically located in the state of Mississippi; and those six stores are operated by OpCo employees who live in and are stationed in Mississippi. Further, OpCo/JCPenney solicited Plaintiff to obtain (1) a JCPenney credit card and (2) a group hospital indemnity policy issued by Transamerica within Mississippi.

[73] at 8.[1] The Court disagrees. These contacts do not support a prima facie case of general jurisdiction because they do not render OpCo "at home" in Mississippi.

First, Smith relies on OpCo's in-state registration and designation of an agent for service of process for general jurisdiction. *Id.* It is true that, depending on

---

[1] Smith did not include most of these facts in her Amended Complaint. She asserted them in her response to OpCo's Motion to Dismiss. Still, the Court considers these facts because a "district court is not obligated to consult only the assertions in the plaintiff's complaint in determining whether a prima facie case for jurisdiction has been made. Rather, the district court may consider the contents of the record at the time of the motion . . . ." *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006) (quoting *Quick Techs., Inc.*, 313 F.3d at 343).

a state's law, a corporation may "consent to in-state suits in exchange for the rights to exploit the local market and to receive the full range of benefits enjoyed by in-state corporations." *Mallory*, 600 U.S. at 130 (relying on Pennsylvania statutes to support consent jurisdiction). But that rule does not apply here because Mississippi expressly rejects this form of consent jurisdiction. Indeed, the Mississippi Supreme Court recently held that Mississippi law "prohibits a finding of personal jurisdiction merely because of the appointment and maintenance of a registered agent" and that a corporate defendant does not "expressly or impliedly consent[] to general jurisdiction when it register[s] to do business" in the state. *K&C Logistics, LLC v. Old Dominion Freight Line, Inc.*, 374 So. 3d 515, 525, 527 (Miss. 2023); *see also* Miss. Code Ann. § 79-35-15. Accordingly, OpCo's in-state registration and designation of an agent for service of process are not prima facie evidence of general jurisdiction.

Smith then points to OpCo's six "brick-and-mortar stores physically located in the state of Mississippi" and "operated by OpCo employees who live in and are stationed in Mississippi." [73] at 8. But these contacts also do not establish an "exceptional case" for general jurisdiction. The Supreme Court's rationale in *BNSF Ry. Co. v. Tyrrell* gives insight here. 581 U.S. 402 (2017). There, the Court considered whether a Montana court had general jurisdiction over a defendant who had "over 2,000 miles of railroad track and more than 2,000 employees" in the state. *Id.* at 414. The Court rejected general jurisdiction because "in-state business . . . does not suffice to permit the assertion of general jurisdiction over claims . . . that

are unrelated to any activity occurring in" the state. *Id.* It explained that the general jurisdiction inquiry "calls for an appraisal of a corporation's activities in their entirety" because a "corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* (quoting *Daimler AG*, 571 U.S. at 139 n.20). The Court's rationale in *BNSF* applies here. Smith recognizes that OpCo "operates over 650 JCPenney stores in the U.S.," with only six stores in Mississippi. [73] at 5. Yet she offers no reason why six stores in Mississippi—less than 1% of the 650 stores nationwide— should subject this non-resident defendant to general jurisdiction.

Lastly, Smith claims OpCo solicited her to obtain a JCPenney credit card and group hospital indemnity policy in Mississippi. *Id.* at 1. OpCo's uncontradicted Declaration shows otherwise. *See* [47-1]. And Smith offers no authority showing that the solicitation of forum residents can establish all-purpose jurisdiction. In short, these contacts do "not suffice to permit the assertion of general jurisdiction over" OpCo for claims unrelated to its contacts with Mississippi. *BNSF*, 581 U.S. at 414.

### 2. Specific Jurisdiction

Specific jurisdiction permits suits that "arise out of or relate to a corporate defendant's activities in the forum State." *Mallory*, 600 U.S. at 166 (quotations omitted). Thus, Smith must make a prima facie showing that this insurance dispute "results from alleged injuries that arise out of or relate to" activities that OpCo "purposefully directed" at the state of Mississippi. *Walk Haydel & Assocs., Inc. v.*

*Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (quotation omitted). Smith does not satisfy this burden.

OpCo does not dispute its license to do business in Mississippi or its registered agent for service of process in the state. OpCo thus "purposefully directed" activities at Mississippi. *See Wilmington Tr., N.A. v. Lincoln Benefit Life Co.*, 328 F. Supp. 3d 586, 590 (N.D. Miss. 2018) (holding nonresident insurer purposely availed itself of the benefits of transacting insurance in Mississippi by registering with the Commissioner of Insurance); *Joshua Props., LLC v. D1 Sports Holdings, LLC*, 130 So. 3d 1089, 1095 (Miss. 2014). But specific jurisdiction fails because Smith's claims do not arise from or relate to those contacts.

Indeed, OpCo offers a sworn Declaration of its Secretary Dawn Wolverton stating that OpCo:

- is a Virginia LLC with a principal place of business in Texas;
- was formed in October 2020—seven years after Smith obtained her Policy—and was organized to buy assets from the bankruptcy estate of J.C. Penney Company, Inc.;
- is not an entity formerly known as "JC Penney, Inc." and is not a successor to J.C. Penney Company, Inc. or any of its subsidiaries, including the entities in the J.C. Penney Company, Inc. bankruptcy proceedings;
- is not an insurance company or a third-party administrator of insurance policies, and does not adjust insurance claims in Mississippi or elsewhere;
- had no involvement in Smith's claim, has not sold a policy of insurance in Mississippi or otherwise, did not sell or issue any policy of insurance to Smith, and was not involved in any claim under the Policy or any other policy of insurance; and
- does not own, issue, or service the JCPenney credit card that Smith allegedly used to pay her premiums for the Policy.

12

[47-1] ¶¶ 3–12. The Declaration then names Synchrony Bank as the entity that "own[s], issue[s], and service[s]" the JCPenney credit card. *Id.* ¶ 13. Smith does not offer a competing affidavit or declaration contradicting Wolverton's testimony. Instead, she relies on new, unsupported facts in her response. She claims OpCo:

- operated and continues to operate JCPenney stores in Mississippi;
- marketed, provided, and maintained JCPenney credit cards;
- solicited Smith through correspondence to Mississippi for her to become a member of the Group Policy, for which OpCo contracted with Transamerica; and
- continues to draw payments from Smith through the JCPenney credit card it manages.

[73] at 9. But as the Court stated, when a defendant asserts "facts in their affidavits that are only disputed by the plaintiffs' allegations[ and are] not supported by facts in an affidavit, then the defendant's assertions are taken as fact." *Pace*, 636 F. Supp. 3d at 720 (citing *Black*, 564 F.2d at 681). The Court therefore accepts as true OpCo's assertions, including its claims that it: (1) did not exist at the time Smith obtained the disputed policy; (2) has never sold an insurance policy in Mississippi or elsewhere; (3) did not sell or issue an insurance policy to Smith; (4) was not involved in adjusting any claim under the disputed policy or any other insurance policy; (5) had no involvement in Smith's claims; and (6) does not own, issue, or service the JCPenney credit card that Smith used to pay her policy premiums. *See* [47-1].

Against these uncontradicted facts, Smith does not make a prima facie showing that her insurance dispute arises out of or relates to OpCo's contacts with

Mississippi. Accordingly, the Court grants OpCo's motion to dismiss for lack of personal jurisdiction.

### B. TAIC

TAIC also moves to dismiss for lack of personal jurisdiction. [78]. Like OpCo, TAIC addresses only the constitutional part of the personal jurisdiction analysis. TAIC Mem. [79] at 5. And Smith again claims general and specific jurisdiction exists.

#### 1. General Jurisdiction

Smith claims general jurisdiction is proper because TAIC (1) is registered to do business in Mississippi and (2) has a registered agent for service of process in the state. She relies on *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 125 (2023). But these facts differ from those in *Mallory*.

In *Mallory*, a Pennsylvania statute required jurisdictional consent in exchange for registration to do business in the state. *Id.* at 127. The Court considered "whether the Due Process Clause of the Fourteenth Amendment prohibits a State from requiring an out-of-state corporation to consent to personal jurisdiction to do business there." *Id.* Answering no, the Court relied on its prior holding in *Pennsylvania Fire* and reaffirmed the validity of consent-based jurisdiction. *Id.* at 138 (citing *Pa. Fire Ins. Co. of Phila. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917)).

*Mallory*'s holding does not stretch to cover the facts before this Court. Unlike Pennsylvania, Mississippi expressly rejects consent-based jurisdiction based on

registration to do business or designation of an agent for service of process. *See K&C Logistics*, 374 So. 3d at 525–28; Miss. Code Ann. § 79-35-15. The *Mallory* Court did "not speculate whether any other statutory scheme and set of facts would suffice to establish consent to suit" because it was "enough to acknowledge that the [Pennsylvania] law and facts before [it] f[e]ll squarely within *Pennsylvania Fire*'s rule." *Id.* at 135–36. Mississippi's departure from this type of consent-based jurisdiction places it outside *Mallory*'s holding. As with OpCo, TAIC's registration and designation of an agent for service of process within the state do not establish general jurisdiction.

### 2. Specific Jurisdiction

TAIC does not dispute that it has a license to do business in Mississippi and a registered agent for service of process there. These facts show TAIC "purposefully directed" activities at Mississippi. *See Wilmington Tr., N.A.*, 328 F. Supp. at 590.

Still, Smith does not show that this insurance dispute arises out of or relates to TAIC's contacts with the forum. TAIC offers a sworn Declaration of its Corporate Counsel, Katelyn Cooper. [78-1]. According to Cooper, TAIC:

- is not an insurance company, third-party administrator of insurance policies, or adjuster of insurance claims;
- has never sold or adjusted an insurance policy and did not sell, issue, or adjust any insurance policy to Smith, including the policy in dispute;
- has no involvement in Smith's claim and does not own, issue, or service the JCPenney credit card Smith used to pay her policy premiums.

*See id.* Smith does not offer a competing affidavit or declaration.[2] The Court

therefore accepts TAIC's uncontradicted allegations as true. *See Pace*, 636 F. Supp.

3d at 720.

TAIC argues that Smith "has alleged no connection between TAIC's in-state

activities and her claims against TAIC." [79] at 8. The Court agrees. Smith's

Amended Complaint provides no prima facie evidence that this suit arises from or

relates to TAIC's contacts with the forum. Indeed, Smith's Amended Complaint

makes only minimal references to TAIC:

- [TAIC] is a New York corporation that maintains its principal place of business in New York City. Upon information and belief, [TAIC] is a wholly-owned subsidiary of TCS, it is registered to conduct business in Texas, and, on information and belief, maintains an office [in] . . . Dallas, Texas 75234. [TAIC's] registered agent is CT Corporation System [in] . . . Dallas, Texas[.]

- Defendants TCS e-Serve, TCS India[,] and [TAIC] regularly operate under the name "TCS." They use the same logo, and each Defendant maintains the same office address in various cities, including Dallas and New York. Upon information and belief, TCS e-Serve, TCS India[,] and [TAIC] offer the same services and products, with TCS e-Serve and TCS America acting as TCS India's North American affiliate.

[41] ¶¶ 9–10. These facts give no insight into how this insurance dispute arises out

of or relates to TAIC's forum contacts. Given Smith's sparse allegations and TAIC's

uncontradicted Declaration, Smith has failed to establish a prima facie showing of

---

[2] Instead, Smith attached to her response two documents: (1) TAIC's registration to do business in Mississippi; and (2) Transamerica's press release on its partnership with Tata Consulting Services. [85-1]; [85-2]. These documents supply little help here. The Court already accepted as true that TAIC is licensed to do business in Mississippi. And the press release includes no information relating to TAIC. *See* [85-2] (evidencing a partnership between Transamerica and Tata Consulting Services and never mentioning TAIC).

16

specific jurisdiction. Accordingly, the Court grants TAIC's motion to dismiss for lack of personal jurisdiction.

## IV.   Motions to Dismiss for Failure to State a Claim

Transamerica and AEGON (collectively "Transam"), along with TCS e-Serve, move under Rule 12(b)(6) to dismiss the Amended Complaint as an improper "shotgun pleading."[3] *See* Transam Mem. [56] at 3; [50] at 1–2 (joining Transam's facts and argument). They also argue that Smith did not plead plausible claims for breach of contract, negligence, bad faith, breach of duty to a third-party beneficiary, or declaratory relief. [56] at 16–32.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *PHI Grp., Inc. v. Zurich Am. Ins. Co.*, 58 F.4th 838, 841 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court views the facts "in the light most favorable to the plaintiff." *Id.* (citing *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010)). But it will "not strain to find inferences favorable to the plaintiff[]" or accept "conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Mere "formulaic recitation

---

[3] TCS e-Serve joins in Transam's arguments but also separately moves under Rule 12(b)(6) to dismiss Smith's contract, bad faith, and negligence claims. TCS e-Serve Mem. [50] at 1–2.

of the elements" of a cause of action will not suffice. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A court can consider "'the contents of the pleadings, including attachments thereto,' in ruling on a motion under Rule 12(b)(6)." *Berry v. Auto. Ins. Co. of Hartford*, No. 3:14-CV-46, 2014 WL 1681329, at *1 (S.D. Miss. Apr. 28, 2014) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)).[4]

A. Shotgun Pleading

Transam and TCS e-Serve argue that Smith's Amended Complaint is a "shotgun pleading" that "fails to comply with federal pleading standards." [56] at 14–15. "In adequately stating a claim against a defendant, a plaintiff may not employ shotgun pleadings." *Magee v. Bank of N.Y. Mellon Corp.*, No. 2:23-CV-64, 2023 WL 4568780, at *3 (S.D. Miss. July 17, 2023). A shotgun pleading "fail[s] to distinguish between the actions of named defendants." *Id.* (quotation omitted). Instead, it "lump[s] all Defendants together and makes no differentiation between Defendants as to any action taken" with respect to a claim. *Slocum v. Allstate Ins. Co.*, No. 2:19-CV-153, 2020 WL 428021, at *6 (S.D. Miss. Jan. 27, 2020). Shotgun pleadings are improper "regardless of any general allegation that the Defendants 'acted jointly,' which is merely conclusory." *Magee*, 2023 WL 4568780, at *3.

---

[4] Smith attached the insurance policy and other documents to her Original Complaint. *See* [1-1–11]. She then relied on and cited to those documents in her Amended Complaint. *See* [41]. The Court therefore considers Smith's pleadings and attachments when considering the motions to dismiss. *Collins*, 224 F.3d at 498.

Most of Smith's Amended Complaint "lumps all Defendants together." *See Slocum*, 2020 WL 428021, at *6. Smith makes no well-pleaded allegations of wrongdoing against AEGON. Instead, she includes only one paragraph of factual allegations that reference AEGON:

> In 2013, JC Penney, Inc., predecessor of JCPenney, and Transamerica Life Insurance Company, through Transamerica's subsidiary Aegon Marketing Services, Inc., solicited JCPenney credit card customers to purchase a group hospital indemnity policy issued by Transamerica. In 2020, JCPenney and related companies filed voluntary petitions for relief under the Bankruptcy Code. Subsequently, Defendant Penney OpCo and other buyers purchased the assets of JCPenney.

[41] ¶ 15. This paragraph does not include enough factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Accordingly, the Court dismisses without prejudice all claims against AEGON because Smith has failed to state a claim.

Smith alleges more factual content against Defendants Transamerica and TCS e-Serve. The Court therefore declines to dismiss her claims against those Defendants on this basis alone. Instead, the Court will consider whether any well-pleaded allegations support her claims against Transamerica or TCS e-Serve.

B. Breach of Contract

In Mississippi, "[a] breach-of-contract case has two elements: (1) 'the existence of a valid and binding contract,' and (2) a showing 'that the defendant has broken, or breached it.'" *Maness v. K & A Enters. of Miss., LLC*, 250 So. 3d 402, 414 (Miss. 2018) (quoting *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1224 (Miss.

2012)).[5] "Insurance policies are contracts that can be enforced through a breach of contract action." *Brown v. ESAB Grp., Inc.*, No. 2:22-CV-155, 2023 WL 2656755, at *3 (S.D. Miss. Mar. 27, 2023) (citation omitted).

Smith does not allege "the existence of a valid and binding contract" between her and TCS e-Serve. *Maness*, 250 So. 3d at 414 (quotation omitted). Thus, her breach of contract claim against TCS e-Serve fails as a matter of law. *See Gulfstream Prop. & Cas. Ins. Co. v. Alarm.com, Inc.*, No. 5:21-CV-52, 2022 WL 1541290, at *2 (S.D. Miss. May 16, 2022).

As for Transamerica, the parties do not dispute that a valid insurance policy exists between them; the only question is whether Transamerica broke or breached it. Smith argues that "Defendants breached their contractual duty" when they did not recognize her "Group Policy Number 74A04Q2649" and name, as shown on her monthly JCPenney credit card statements. [41] ¶¶ 16, 43, 92. According to her, "Defendants claims handling practices . . . constitute[d] not only breach of contract, but also breach of the implied covenant of good faith and fair dealing" because they "fail[ed] and refus[ed] to promptly pay the amounts individually owed to Plaintiff as required by the terms of the Policy." *Id.* ¶¶ 50, 94.[6]

---

[5] The Amended Complaint asserts federal jurisdiction under the Class Action Fairness Act, [41] ¶ 13, which is based on diversity jurisdiction, *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 248 (5th Cir. 2008). The Court therefore applies the substantive law of the forum state to determine whether Smith stated a claim for breach of contract against Transamerica and TCS e-Serve. *See id.*

[6] Smith further contends that "arguments concerning breach are . . . premature as discovery regarding its policies and procedures may further reveal breaches of contract." [69] at 12. This argument is unavailing. Smith must still allege enough facts that would permit the Court to infer the Defendants are liable for a breach of contract. *See Iqbal*, 556 U.S. at

Transamerica disagrees and insists the breach of contract claim fails as a matter of law because Smith "'does not cite any specific provision of the' contract 'that was allegedly breached' and 'allud[es] only vaguely to some failure to perform' responsibilities." [56] at 17 (quoting *Caldwell v. L-3 Vertex Aerospace*, No. 3:13-CV-123, 2013 WL 1768683, at *2 (S.D. Miss. Apr. 24, 2013)). And Transamerica argues that the vague allegations of a failure to "timely adjust" or "promptly pay" are "belied by [Smith's] own allegations and the text of the policy." *Id.*

The Court agrees that Smith's Amended Complaint does not cite the policy provision Transamerica allegedly breached. Instead, she argues Transamerica "did not recognize her 'Group Policy Number 74A04Q2649'" or "timely adjust" and "promptly pay." [41] ¶ 94. "'Questions concerning the construction of contracts are questions of law,' and thus appropriate for resolution by the Court on this motion to dismiss." *Stewart v. GMAC Mortg., LLC*, No. 2:10-CV-149, 2011 WL 1296887, at *7 (S.D. Miss. Mar. 31, 2011) (quoting *Wesley M. Breland, Realtor, Inc. v. Amanatidis*, 996 So .2d 176, 179 (Miss. Ct. App. 2008)). The Court therefore turns to the policy's terms.

### 1. The Policy's Terms

The "construction of an insurance contract is limited to examining the policy." *Am. States Ins. Co. v. Natchez Steam Laundry*, 131 F.3d 551, 555 (5th Cir. 1998) (citation omitted). "The policy itself is the sole manifestation of the parties' intent,

---

686 ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery.").

and no extrinsic evidence is permitted absent a finding by a court that the language is ambiguous and cannot be understood from a reading of the policy as a whole." *Id.* (quoting *Great N. Nekoosa Corp. v. Aetna Cas. & Sur. Co.*, 921 F. Supp. 401, 406 (N.D. Miss. 1996)).

First, Smith appears to allege that Transamerica breached the policy when it did not recognize "Group Policy Number 74A04Q2649." *See* [41] ¶¶ 45−50. But the unambiguous terms of the policy show otherwise:

**CERTIFICATE OF INSURANCE**
**GROUP ACCIDENT HOSPITAL INSURANCE**

Person(s) insured and Schedule of Insurance are shown on the Schedule of Insurance.

**Transamerica Life Insurance Company** (herein called, "we," "us" or "our["]) has issued Policy No. <u>25451 GC939</u> to <u>J. C. Penney Corporation, Inc. (the J. C. Penney Credit Cardholder Group)</u> . . . which makes available accident hospital insurance for eligible persons.

We agree to pay the benefits herein provided with respect to the person(s) insured hereunder, subject to all terms of the Policy.

. . .

**SCHEDULE OF INSURANCE**

CERTIFICATE NUMBER: 74A04Q2649

INSURED: MS VELMA SMITH

[1-11] at 6. The policy's provisions then include:

**GENERAL PROVISIONS**

**ENTIRE CONTRACT**

Your Certificate is furnished in accordance with and subject to the terms of the Policy. It is not part of the Policy, but it is evidence of the insurance provided under the Policy. The Policy and any attachments form the entire contract of insurance. No agent may change or waive any provisions of the Policy under which this coverage is provided.

*Id.* at 9. Based on the policy's clear language, Smith's argument fails. The policy differentiates between the "policy" number "25451 GC939" and Smith's individual "certificate" number "74A04Q2649." *Id.* at 6. As alleged in the Amended Complaint, Smith "entered 'Group Policy Number 74A04Q2649,'" which was "not recognized." *See, e.g.,* [41] ¶¶ 21–22, 27. But "74A04Q2649" is not her group policy number. And it is reasonable to receive a "not recognized" message after inputting an incorrect group policy number. The policy provisions also state that the document includes the entire contract and that no agent can alter the provisions. [1-11] at 9. Smith offers no reason why the JCPenney credit card statement alters the terms of the policy contract. Indeed, Smith does not explain how Transamerica could be liable based on a JCPenney-issued document at all. Without an explanation, Smith's Amended Complaint shows no entitlement to relief. In short, Smith's allegations "do not permit the court to infer more than the mere possibility of misconduct" because her "complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft*, 556 U.S. at 679 (cleaned up).

Smith's allegation that Transamerica breached its duty to "timely adjust" and "promptly pay" also fails. [41] ¶ 94. The policy provisions provide a timeline for the adjustment and payment of claims:

**NOTICE OF CLAIM**

Written Notice of Claim must be given to us within 30 days after any loss covered under the Policy occurs or as soon as possible thereafter. You may give the notice or may have someone do it for you. The notice should include your name and Certificate Number as shown in the Schedule of Insurance. Notice should be mailed to us at P.O. Box 869090, Plano, Texas, 75086-9916.

**CLAIM FORMS**

When we receive the Notice of Claim, we will send the claimant forms for filing Proof of Loss. If we do not send the forms within 15 days, the claimant can meet the Proof of Loss requirement by providing us with a written statement describing what happened. We must receive this statement within the time given for filing Proof of Loss.

**PROOF OF LOSS**

Written Proof of Loss must be given to us within 90 days after the date of the loss or as soon as possible thereafter. Proof must, however, be furnished no later than one year from the time it is otherwise required, except in the absence of legal capacity. . . .

**TIME OF PAYMENT OF CLAIMS**

Benefits payable under the Policy will be paid within 45 days after receipt of due written proof of such loss. All accrued indemnities for loss for which the policy provides periodic payment will be paid monthly. Any valid claim not paid within 45 days after receipt of due written proof of loss will be increased by interest at a rate of 1½% per month until the claim is finally settled. If we fail to pay benefits when due, you may bring action to recover such benefits and any other damages as may be allowable by law.

[1-11] at 10. Smith's Amended Complaint shows that, before December 7, 2021, she did not follow the policy's instructions for making a claim or providing proof of loss. *See, e.g.*, [41] ¶¶ 21−25. Contrary to Smith's view, "the duty of good faith and fair dealing is not breached when the contract authorizes the precise action (or inaction) about which a party complains." *West v. Nationwide Tr. Servs., Inc.*, No 1:09-CV-295, 2010 WL 3122801, at *2 (S.D. Miss. Aug. 4, 2010). Smith's Amended Complaint "does not establish that [Transamerica] was required by the [policy] to act differently than [it] did." *Id.*

24

The policy required Transamerica to pay benefits under the policy "within 45 days after receipt of due written proof of such loss." [1-11] at 10. Smith's Amended Complaint states that on December 7, 2021, she "sent a claim letter to Defendant Transamerica with Transamerica's claims form executed . . . and with supporting documents for her claim." [41] ¶ 34. She makes no allegation that Transamerica failed to pay the benefits due under the policy within 45 days after she submitted her claim and proof of loss on December 7, 2021. *See Thomas v. Nationstar Mortg., LLC*, No. 2:22-CV-88, 2023 WL 2780360, at *11 (S.D. Miss. Feb. 6, 2023) (finding that the defendant had no obligations under the contract to promptly act until the unambiguous term in the contract was satisfied). Instead, she concedes that Transamerica paid the benefits owed. *See* [41] ¶ 36; [69] at 4, 11. Because Smith "has not alleged conduct inconsistent with the parties' rights and obligations under the" policy, she has failed to plead a breach of contract. *Thomas*, 2023 WL 2780360, at *13.[7]

C.  Bad Faith

Smith seeks punitive and extracontractual damages for her bad-faith claim. [41] ¶ 110 (seeking "actual, compensatory, consequential, bad faith, and punitive damages, plus court costs, attorney's fees, and pre- and post-judgment interest at the legally allowable limit"). Count III does not specify which Defendant allegedly

---

[7] Because Smith did not state a claim for breach of contract, her negligent breach claim, Count II, also fails. "Put another way, the breach of a contract (whether described as 'negligent' or not) is not actionable in tort under an ordinary negligence theory unless breaching the contract also breached a duty of care recognized by tort law." *Clausell v. Bourque*, 158 So. 3d 384, 391 (Miss. Ct. App. 2015). The Court dismisses Count II.

acted with bad faith. The Court will assume she asserts the claim against Transamerica. *See* [41] ¶ 45 ("By its responses, and lack of responses to Plaintiff's efforts made based on information contained on Plaintiff's JCPenney credit card statement, Transamerica . . . arbitrarily, in bad faith and/or in a grossly negligent manner, effectively denied that Plaintiff was an insured or that the group hospital indemnity insurance even existed, and delayed and in an untimely manner failed to properly, fully and adequately adjust the claim.").

In Mississippi, a plaintiff may pursue extracontractual and punitive damages claims against an insurance provider for bad-faith refusal to pay. *See State Farm Fire & Cas. Co. v. Simpson*, 477 So. 2d 242, 250 (Miss. 1985). Bad-faith claims allow the award of damages where an insurer has no arguable reason for failure to honor a claim and the failure does not result from a clerical error or honest mistake. *Weems v. Am. Sec. Ins. Co.*, 486 So. 2d 1222, 1227 (Miss. 1986) (citing *Simpson*, 477 So. 2d at 250). To succeed on a bad-faith claim for extracontractual damages, Smith must first show a breach of contract. *See Blue Cross & Blue Shield, Inc. v. Maas*, 516 So. 2d 495, 496–97 (Miss. 1987); *see also Rumbley v. State Farm Fire & Cas. Co.*, No. 3:21-CV-209, 2022 WL 1278091, at *4 (S.D. Miss. Apr. 28, 2022). As explained, Smith did not plead a plausible breach of contract claim. Therefore, her bad-faith claim necessarily fails. *See id.* The Court dismisses Count III.

D.  Breach of Duty to a Third-Party Beneficiary

"[U]nder Mississippi law, a third party may maintain an action as a third-party beneficiary to enforce a promise made for their benefit." *Rein v. Benchmark*

26

*Constr. Co.*, 865 So. 2d 1134, 1145 (Miss. 2004) (citing *Burns v. Wash. Sav.*, 171 So. 2d 322, 324 (Miss. 1965)). But the "right must 'spring' from the terms of the contract." *Id.* (citing *Trammell v. State*, 622 So. 2d 1257, 1260 (Miss. 1993)). "[A] third-party beneficiary may sue for a contract breach only when the alleged broken condition was placed in the contract for their direct benefit." *Id.* "An incidental beneficiary to a contract, however, does not acquire any rights under the contract against the promisor or promisee." *Mortera v. State Farm Fire & Cas. Co.*, 561 F. Supp. 3d 684, 693 (S.D. Miss. 2021) (citing *Rosenfelt v. Miss. Dev. Auth.*, 262 So. 3d 511, 519 (Miss. 2018)).

Smith argues that she "is a third-party beneficiary of the contract between Defendants Transamerica and TCS[.]" [41] ¶ 113. But she gives almost no information on the basis of her claim. Instead, she merely alleges:

> Plaintiff is a third-party beneficiary of the contract between Defendants Transamerica and TCS and the class members. All Defendants acted in concert with Defendant TCS related to the functions TCS performed related to class members' insurance policies and all Defendants asserted control over Defendant TCS's actions so as to make TCS a mere instrumentality of the other Defendants.

> Had Defendant TCS and the other Defendants acting in concert properly performed the duties and functions of the contract between them and Plaintiff and the class, rather than performing the wrongful actions and omissions outlined in this complaint, Plaintiff and the class members would not have been damaged by those wrongful actions and omissions as they have been.

*Id.* ¶¶ 113−14. Smith offers only conclusory statements to support her third-party beneficiary claim. Her Amended Complaint does not plead facts sufficient to show "a promise made for [her] benefit." *Rein*, 865 So. 2d at 1145 (citation omitted). Nor

does she show that her right to sue "springs" from a term of any contract, or that the "alleged broken condition was placed in the contract for [her] direct benefit." *Id.* In short, Smith supplies no well-pleaded facts to support her third-party beneficiary claim. Accordingly, the Court dismisses Count IV.

    E.  Declaratory Judgment

    Smith seeks "a declaration that Defendants['] custom and practices in [] denying and delaying payment of claims is unlawful and in breach of contractual duties owed to Plaintiff and the class." [41] ¶ 120. "The Fifth Circuit has found that the 'Declaratory Judgment Act, which authorizes a federal court to declare the rights and other legal relations of any interested party seeking such declaration, is merely a procedural device and does not create any substantive rights or causes of action.'" *Foster v. Reliance First Cap., LLC*, No. 1:19-CV-201, 2020 WL 5260768, at *4 (N.D. Miss. Sept. 3, 2020) (quoting *Smitherman v. Bayview Loan Servicing, LLC*, 727 F. App'x 787, 792 (5th Cir. 2018)). "When an underlying claim for relief is dismissed, it is appropriate to also dismiss a claim for declaratory relief." *Id.* Because the Court dismisses Smith's other claims, it also dismisses her claim for declaratory relief.

    F.  Injunctive Relief

    Lastly, the parties dispute whether Smith has Article III standing to seek injunctive relief. "To demonstrate standing, 'a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury

would likely be redressed by judicial relief.'" *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 733 (5th Cir. 2023) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). "Plaintiffs seeking injunctive" relief must "demonstrat[e] a continuing injury or threatened future injury." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (citing *City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983)). "The threat of future harm must be 'certainly impending'; mere '[a]llegations of possible future injury' do not suffice." *Attala Cnty., Miss. Branch of NAACP v. Evans*, 37 F.4th 1038, 1042 (5th Cir. 2022) (quotation omitted). "Past wrongs are relevant to 'whether there is a real and immediate threat of repeated injury,' but alone they may be insufficient to establish standing for prospective relief." *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).

Smith seeks "a preliminary and permanent injunction . . . against Defendants . . . from engaging in each of the policies, practices, customs, and usages complained of herein." [41] at 29. According to her, "[i]t is reasonable to expect that Defendants will continue to engage in the pattern and practice of denying the existence of group policies and information on insureds' names absent a decision by the Court." *Id.* ¶ 69. But this does not show a "continuing harm or a[n] . . . 'immediate threat of repeated injury in the future.'" *Attala Cnty.*, 37 F.4th at 1042. Indeed, Smith does not establish that she is likely to suffer another accident, much less one serious enough to satisfy the policy's criteria for filing a claim. *See* [41] ¶ 40 (requiring claimant to be: (1) involved in an accident; (2) injured in the accident; (3) transported by ambulance to hospital for treatment because of accident; (4)

29

admitted to emergency room because of accident; and (5) admitted to hospital as a patient with overnight stay).

In short, Smith does not establish a real and immediate threat of similar injury in the future. Smith therefore lacks standing to seek injunctive relief.

V.     Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the stated reasons, the Court GRANTS Penney OpCo and TAIC's [47], [78] Motions to Dismiss without prejudice. The Court GRANTS TCS e-Serve's [49] Motion to Dismiss with prejudice. And the Court GRANTS Transamerica and AEGON's [55] Motion to Dismiss with prejudice as to Transamerica and without prejudice as to AEGON. The Court will issue a final judgment consistent with this Order.

SO ORDERED, this 5th day of February, 2024.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE